STATE *ex rel.* HELEN FARMER WOODING

*v.*

JAMES R. JARRETT, *et al.*

(No. 14787)

Decided March 19, 1982.

632

J. David Cecil for appellant.

Chauncey H. Browning, Attorney General, Joseph C. Cometti, Assistant Attorney General, for appellees.

PER CURIAM:

This is an appeal by Helen Farmer Wooding from an order of the Circuit Court of Kanawha County denying her petition for habeas corpus ad subjiciendum, through which she sought release from the West Virginia state prison for women. This request for release was premised on the appellant's allegation that the West Virginia Board of Probation and Parole [hereinafter referred to as the Board] had acted in an arbitrary and capricious manner in denying her parole. The circuit court, however, concluded that the evidence presented failed to reveal a violation of any of the appellant's constitutional or statutory rights, and, in addition, failed to support a finding of an arbitrary and capricious denial of parole. Having reviewed the record, we are not satisfied that the appellant was afforded a proper review by the Board. We therefore remand this case for further proceedings.

In April of 1978, the appellant, Helen Farmer Wooding, pleaded guilty in the Circuit Court of Kanawha County to two counts of Obtaining Property by False Pretenses

through the use of forged checks. She was sentenced to two concurrent 1-5 years prison terms. However, the sentencing judge recommended that the appellant serve only the minimum one-year term.[1]

On May 4, 1979, the appellant appeared before the Board. Following this interview, the Board voted to deny the appellant parole. The reasons given by the Board for denying parole were as follows:

1. The nature of your criminal offense was such that your release at this time would tend to depreciate the seriousness of that offense.

2. Public sentiment from the area in which your crime was committed indicates you may be a poor risk for parole at this time.

3. Your release at this time is not in your best interest nor in the best interest of society.

On August 2, 1979, the appellant filed a petition for a writ of habeas corpus in the Circuit Court of Kanawha County. Through that petition, the appellant sought to be released on parole or otherwise discharged from confinement. As indicated earlier, this petition was premised on the appellant's allegation that the Board had acted in an arbitrary and capricious manner in denying her parole. More specifically, the appellant contended that the Board had failed to consider that information which was favorable to her release on parole. In addition, the appellant contended that the Board's denial of parole defeated the sentencing judge's expectations that she would serve only the minimum one-year sentence.

The matter was heard by another circuit judge on October 17, 1979. The appellant testified on her own behalf

---

[1] The sentencing judge testified at the hearing in the circuit court that he had two choices in sentencing the appellant. One, was to sentence the appellant to one year in the county jail. The other, was to sentence her to the women's prison in Pence Springs for one to five years. In making the decision to send the appellant to the women's prison, he indicated that his expectation was, assuming good conduct, that the appellant would be released after one year.

and also presented testimony from the sentencing judge and her sister, Patricia Ann Casto. The only other testimony came from a member of the Board.

The stipulated evidence presented at the hearing established that the appellant had no criminal convictions other than those which led to her confinement in the West Virginia state prison for women. In addition, this evidence indicated that the appellant had never been cited for violating institutional rules or regulations during her term of incarceration. Finally, it is clear that, pursuant to the then regular practice of the Board, the appellant was not permitted to view her inmate file.[2]

The testimony given by a member of the Board revealed that the Board had relied on the pre-sentencing report to evaluate public sentiment regarding the appellant. The member also testified that the Board had doubted the truthfulness of the appellant's statements concerning the circumstances of the crimes for which she was imprisoned. Finally, the member testified that the Board did, in fact, consider evidence favorable to the appellant's release.

Based on this evidence, the circuit court concluded that no constitutional or statutory right of the appellant had been violated, and the Board's actions had not been arbitrary or capricious. Therefore, the circuit judge determined the appellant was not entitled to relief and dismissed the petition. It is from this action that the appellant seeks relief in this Court.

"The eligibility of a prisoner for parole consideration and certain factors to be considered by the West Virginia Board of Probation and Parole in determining the actual release of a prisoner upon parole are established by *W.Va. Code,* 62-12-13." *Rowe v. White,* ___ W.Va. ___ 280 S.E.2d 301, 302-303 (1981). Basically, this statute provides that a prisoner may be paroled if he or she: (1) has served the minimum term of his indeterminate sentence or one-third

---

[2] Under this Court's ruling in *Tasker v. Mohn,* ___ W.Va. ___ 267 S.E.2d 183 (1980), an inmate is entitled to access to information in his record which will be used to determine whether he receives parole.

of his definite term sentence; (2) is not under punishment or in solitary confinement for any infraction of prison rules; (3) has maintained a good conduct record for at least three months prior to his parole release; and (4) has satisfied the board that he or she will act lawfully when released, and his or her release is compatible with the best interests and welfare of society. In reviewing this basic standard, it is apparent that the first three criteria are objective. "A prisoner knows whether he has or has not met those criteria. The last factor involves subjective, discretionary evaluation by the board, and due process rights, which attempt to limit malevolent, arbitrary or reckless decisions, apply." *Tasker v. Mohn,* ____ W.Va. ____ 267 S.E.2d 183, 188 (1980).

In order for the parole interview to satisfy these due process rights, we have ruled that each parole release interview include the following minimum standards:

"(1) Each prospective parolee must be given timely and adequate notice of the date and hour of his parole release interview;

(2) An inmate is entitled to access to information in his record which will be used to determine whether he receives parole (absent overriding security considerations which must be recorded in his file);

(3) Each inmate may personally appear before the parole board and give oral and documentary evidence;

(4) A record, which is capable of being reduced to writing, must be made of each parole release interview to allow judicial review; and

(5) Inmates to whom parole has been denied are entitled to written statements of the reasons for denial."

Syllabus point 4, *Tasker, supra.*

Although *Tasker* had not been decided by this Court at the time of the appellant's parole interview, we feel the principles enumerated in that opinion are equally applicable to the appellant's case. In fact, this case serves to

emphasize the necessity for our ruling in *Tasker*. For instance, in reviewing the Board's decision, we are severly hampered by the fact that there is no transcript of the parole board hearing. As we noted in *Tasker, supra*, at 190, "[i]f, in addition to a record of materials provided by the board, we have a transcript of the interview, we can determine with much greater conviction whether its actions were reasonably based on the proper data or whether it acted arbitrarily." However, after carefully reviewing the material we do have before us, we are sufficiently concerned with the Board's actions, that we are compelled to remand this case for another hearing.

Our decision to remand this case is based on two concerns. Our first concern is the Board's focus in reaching its decision to deny the appellant parole. Two of the three reasons given for denying parole were tied to the appellant's prior criminal activity:

1. The nature of your criminal offense was such that your release at this time would tend to depreciate the seriousness of that offense.

2. Public sentiment from the area in which your crime was committed indicates you may be a poor risk for parole at this time.

While it was within the discretion of the Board to consider prior criminal activity, *W. Va. Code*, 62-12-13(d) requires that other matters also be considered. Specifically, *Code*, 62-12-13(d) provides:

(d) When considering a penitentiary prisoner for release on parole, the board of parole shall have before it an authentic copy of or report on the prisoner's current criminal record as provided through the department of public safety of West Virginia, the United States department of justice or other reliable criminal information sources and written reports of the warden or superintendent of the penitentiary, as the case may be, to which such prisoner is sentenced:

(1) On the prisoner's conduct record while in prison, including a detailed statement showing any and all infractions of prison rules by the

prisoner and the nature and extent of discipline and punishment administered therefor;

(2) On improvement or other changes noted in the prisoner's mental and moral condition while in prison, including a statement expressive of the prisoner's current attitude toward society in general, toward the judge who sentenced him, toward the prosecuting attorney who prosecuted him, toward the policeman or other officer who arrested him and toward the crime for which he is under sentence and his previous criminal record;

(3) On the prisoner's industrial record while in prison, showing the nature of his prison work or occupation and the average number of hours per day he has been employed in prison industry and recommending the nature and kinds of employment which he is best fitted to perform and in which he is most likely to succeed when he leaves prison;

(4) On physical, mental and psychiatric examinations of the prisoner conducted, insofar as practicable, within the two months next preceding parole consideration by the board.

Therefore, "[i]t is clear that the provisions of *W. Va. Code*, 62-12-13, reflect an intention on the part of the West Virginia Legislature to require the parole board to consider positive as well as negative factors in the granting or denial of parole." *Rowe, supra* at 306. However, in this particular case we cannot say with certainty that the Board, did in fact, consider favorable factors. Rather, it appears that the Board restricted its inquiry almost entirely to the appellant's past criminal activity, a decidedly negative area over which the appellant had no control after incarceration.

The second concern which prompts us to remand this case is the Board's reliance on the pre-sentencing report to determine community sentiment regarding the appellant. The portion of the report pertaining to community sentiment was limited to an investigation of the attitudes of the sentencing judge, prosecuting attorney, arresting

officer, and probation officer toward the appellant. First, such an investigation is too limited to be representative of the community, and therefore, cannot by itself support a denial of parole. Second, in reviewing this report, we find that two of the four individuals questioned favored parole for the appellant as soon as possible. A third individual indicated that after serving one year of her sentence, correctional officers would be in a better position to judge the appellant's qualifications for parole. Only the fourth person felt strongly that the appellant should not be paroled. Therefore, even if the investigation was adequate, we do not believe that the Board was justified in finding that community sentiment opposed the appellant's release.

"The decision to grant or deny parole is a discretionary evaluation to be made by the West Virginia Board of Probation and Parole. However, such a decision shall be reviewed by this Court to determine if the Board of Probation and Parole abused its discretion by acting in an arbitrary and capricious fashion." Syllabus point 3, *Rowe, supra.* The appellant maintains that the Board did act in an arbitrary and capricious fashion in denying her parole, and she asks this Court to release her. This we will not do. However, for the reasons outlined above, we feel it necessary to provide the appellant another parole interview.

The decision of the Circuit Court of Kanawha County is, therefore, reversed and the case is remanded to the circuit court with directions to order the Parole Board to conduct a prompt hearing following the principles of *Tasker* and *Rowe.* The appellant's appeal bond shall remain in effect during the remand.

*Reversed and remanded
with directions.*